Gene Y. Kang
**RIVKIN RADLER LLP**
25 Main Street, Suite 501
Court Plaza North
Hackensack, New Jersey 07601
Telephone:  201-287-2460
Fax: 201-489-0495

Maristella Collazo-Soto (to be admitted *pro hac vice*)
**FERRAIUOLI LLC**
221 Ponce de León Avenue, Suite 500
San Juan, Puerto Rico 00917
Telephone: 787-766-7000
Fax: 787-766-7001

*Counsel for Plaintiff, Advanced Total Marketing Systems, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ADVANCED TOTAL MARKETING SYSTEMS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**BIG STOCK, INC.**<br><br>Defendant. | Civil Action No.:<br><br>**COMPLAINT FOR:**<br><br>   **(1) TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114(1);**<br><br>   **(2) FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, 15 U.S.C. § 1125(a)**<br><br>   **(3) UNLAWFUL IMPORTATION OF GOODS INFRINGING U.S. TRADEMARKS OR NAMES, 15 U.S.C § 1124 AND 19 U.S.C. § 1526.**<br><br>   **(4) UNFAIR COMPETITION, N.J. STAT. ANN. § 56:4-1, ET SEQ.**<br><br>   **(5) TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND MISAPPROPRIATION UNDER NEW JERSEY COMMON LAW** |

Plaintiff, Advanced Total Marketing Systems, Inc. (hereinafter, "ATMS" or "Plaintiff"), through the undersigned attorneys, files this Complaint against Big Stock, Inc. (hereinafter, "Big Stock" or "Defendant"), for trademark infringement and false designation of origin under federal law and state law, and hereby alleges as follows:

### NATURE OF THE CASE

1. This action arises from Big Stock's unauthorized importation, distribution, and sale in the United States of ATMS food products that were intended for sale only in Latin America.

2. ATMS is the exclusive owner of all trademarks, service marks, and trade dresses encompassed in the images, layout, and overall "look and feel" of its names, logos, labels, and products, among others, within the United States Patent and Trademark Office ("USPTO") of the "Zambos" wordmark, logo, and variations thereof (hereinafter, the "Mark").

3. Only, ATMS, Dinant S.A. de C.V. (ATMS' main distributor) (the "Authorized Distributor"), and Mexilink, Inc., a sub-licensee for the United States ("Mexilink"), may import and sell authorized Products (as defined herein) in the United States.

4. ATMS manufactures and distributes Yummies salty snacks products in the United States since 1999 (hereinafter, the "Products") which include products bearing the Mark. The Mark was registered on the USPTO principal register on October 29, 2002. *See* **Exhibit A**.

5. ATMS ensures that the contents, packaging, and labeling of the Products sold in the United States comply with United States laws and regulations by subjecting its products to high-quality control and transportation standards and by providing a combination of quality ingredients to the Products.

6.      Big Stock is a "free rider," unfairly profiting off the value of the Mark and the investment that ATMS and its Authorized Distributor have made in creating consumer demand for the Products.

7.      Big Stock is a New Jersey-based company that imports and sells the Products in New Jersey, and upon information and belief, elsewhere in the United States. Big Stock is not an owner nor a licensee of the Mark in the United States.

8.      Trademarked products that are imported and sold without the trademark's owner's authorization are often referred to as "gray market goods."

9.      Consumers in the United States often buy the Products sold in the United States without realizing that they are not authorized by ATMS for resale in the United States. This is troublesome because consumers become confused as to the source of the products, and in some circumstances, let down, by the quality of the products they are consuming.

10.     Despite being sold under the same Zambos' brand and having similar appearances, the Products sold by ATMS are materially different from the unauthorized Zambos products sold through the grey market (the "Gray Market Products").

11.     Big Stock sells Grey Market Products in the United States.

12.     The material differences are damaging and harmful for ATMS, the Authorized Distributor, Mexilink, and consumers. Big Stock's Gray Market Products sold in the United States are not properly labeled in compliance with the Food, Drug, and Cosmetic Act ("FDCA"),  21 U.S.C. ch. 9 § 301 et seq, and the Food & Drug Administration's ("FDA") regulations and guidance. Big Stock's unauthorized Zambos products often are labeled in Spanish-only, contain different nutritional information, contain formulations not intended for the United States and are not subject to United Sates' standards of quality and transportation control, among others. These

material differences result in consumer confusion and loss of ATMS' retail consumption in the United States.

13.     Accordingly, ATMS brings this action to recover damages due to Big Stock's unlawful distribution and sale of contraband Gray Market Products and to prevent its further distribution and sale of such Products in the United States. Plaintiff seeks this relief through claims under the federal Lanham Act and Tariff Act, the New Jersey Trademark Act, the New Jersey Unfair Competition Act, and New Jersey Common Law.

### THE PARTIES

14.     ATMS is a corporation organized and existing under the laws of Panama, with its principal place of business located at Comosa Bank building, First Floor, Samuel Lewis Avenue, P.O. Box 4881, Panamá 5, Panamá. ATMS is the owner of Zambos' trademarks, including the Mark, in the United States.

15.     Upon information and belief, Big Stock is a New Jersey corporation with its principal place of business at 815 Fairview Avenue, Unit 5 Fairview, New Jersey 07022. Big Stock describes itself as "a company dedicated to the importation and commercialization of traditional, nostalgic and original products from our Latin Region, mainly from Central America. Now, we also import from Asia. High-quality products, made by world-class companies with the highest manufacturing standards that the current market demands."[1]

### SUBJECT MATTER JURISDICTION AND VENUE

15.     Subject matter jurisdiction over this action is conferred upon this Court because this is an action for trademark infringement under the Lanham Act, 15 U.S.C. § 1114 and unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) and (c). This

---

[1] *See* http://www.bigstockinc.com (Spanish to English translation supplied on the website).

Court has jurisdiction under 15 U.S.C.A. § 1121, 15 U.S.C.A. § 1116(a), § 1125(a) and (c) and 28 U.S.C.A. §§ 1331 (federal question), 1338(a) (trademark infringement) and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

16.     Venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b) and (c) because Big Stock's principal place of business is located in this judicial district, it regularly transacts business in this judicial district, and because a substantial portion of the acts and omissions by Big Stock giving rise to ATMS' claims and the damages and injuries complained of occurred in this judicial district. Accordingly, this Court has personal jurisdiction over Big Stock by virtue of its systematic and continuous contacts with New Jersey.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### ATMS and ATMS' Products

17.     Through the Authorized Distributor, ATMS distributes its Products in different countries throughout the world. The Authorized Distributor and Mexilink are responsible for the marketing, distribution, and sale of the Products in the United States. ATMS sells approximately four hundred fifty-thousand (450,000) cases of the Products in the United States.

18.     ATMS devotes substantial effort and resources to ensure that the Products sold in the United States are based on the preferences of United States consumers, that are safe to consumers, and that they comply with the FDA requirements and other applicable laws of the United States.

19.     Before the distribution and sale of the Products, ATMS ensures that the Products are properly manufactured, packaged, and labeled to their intended specifications and formulations. Moreover, ATMS conducts quality control checks before and after the Products are

distributed. At all moments, ATMS monitors the market by receiving consumer inquiries, tracking, and investigating complaints.

20.     ATMS granted an exclusive worldwide license for the sale of its Products directly to the Authorized Distributor, who in turn, sub-licenses Mexilink to import and sell authorized Products in the United States.

21.     By virtue of these agreements, ATMS' Authorized Distributor enjoys certain rights and benefits—to distribute the Products within the United States. In carefully selecting an authorized distributor, ATMS seeks and ensures that the goodwill and quality associated with the Products is maintained and guaranteed.

22.     Due to ATMS' strictness in implementing high-quality standards to its distributors, the Products have been tremendously successful in the United States.

### Trademarks for ATMS' products

23.     ATMS owns all rights in and to the Marks and the Trade Dresses in the United States as well as all common law rights in and to the Marks and the Trade Dresses in New Jersey, in connection with the selling, offering, and distributing of the Products.

24.     Particularly, ATMS owns the following registered trademarks, pending applications, and common law trademarks:

| Mark | Registration/ Presentation No. in the USPTO | Status | Class/Products |
|---|---|---|---|
| **ZAMBOS** | 2643142 | Registered | Class 029: Plantain chips |
| | 5039357 | Registered | Class 029: Fried plantain; Plantain chips |

|  | | | |
|---|---|---|---|
|  | 4811390 | Registered | Class 029: Fried plantain; Plantain chips |
|  | 4811389 | Registered | Class 029: Fried plantain; Plantain chips |
|  | 4811388 | Registered | Class 029: Fried plantain; Plantain chips |
|  | 4811387 | Registered | Class 029: Fried plantain; Plantain chips |
| **YUMMIES CRUNCH** | 4975767 | Registered | Class 030: Baking-powder; Cheese flavored snacks, namely, cheese curls; Coffee; Coffee substitutes; Flour; Honey; Ice creams; Molasses syrup; Mustard; Rice; Sago; |

| | | | |
|---|---|---|---|
| | | | Salt; Sugar; Tapioca; Tea; Tortilla chips; Vinegar; Yeast |
|  | 5558175 | Registered | **Class 029:** Latin American style food products, namely, processed flavored plantains slices, processed flavored yucca chips, fried pork with salt and chili, potato flakes of different flavors, Latin American style food products, namely, fired flavored peanuts and baked flavored peanuts.<br><br>**Class 030:** Fried corn tortilla snack foods with different flavors; corn-based snack foods, namely, extruded corn with different flavors; popcorn of different flavors. |
|  | 6024381 | Registered | **Class 030:** Flour and preparations made from cereals, namely, corn flour based snack foods; bread, pastry and confectionery, namely, creole rings baked with farmer's cheese and snack foods. |
| **ZAMBUS** | 90552749 | Pending to be registered. | **Class 29:** Fried plantain; Plantain chips. |
| **TAQUERITOS** | 6354122 | Registered | **Class 030:** Corn-based snack foods. |
|  | 6354124 | Registered | **Class 030:** Corn-based snack foods. |

## **Big Stock's Wrongful Distribution and Sale of Zambos in the United States**

25.     Big Stock purchases various Zambos' goods through the gray market, including products manufactured by ATMS that are only intended for sale in Latin America. Those Gray Market Products are imported by Big Stock into the United States without authorization and are distributed in New Jersey and elsewhere throughout the United States. Each month Big Stock sells thousands of dollars' worth of Gray Market Products.

26.     Big Stock has not been authorized by ATMS, the Authorized Distributor, nor by Mexilink, to distribute or sell Gray Market Products in the United States. Nevertheless, since at least 2017, Big Stock has conspired to acquire Zambos products from Latin America, destined for the Latin America market, in order to distribute and sell them to retailers and other customers in the United States.

27.     The Gray Market Products that Big Stock sells in interstate commerce include, but are not limited to:

- Zambos Picositos;

- Zambos Salsa Verde;

- Zambos Ceviche;

- Zambos Cassava; and

- Zambos Originales.

28.     Big Stock regularly markets and provides retailers in the United States with advertisements and catalogs that use the Mark to advertise Gray Market Products. For example, in a shopper advertisement for Big Stock, Big Stock advertises the Gray Market Products for sale. *See* **Exhibit B**. Furthermore, Big Stock promotes the products it acquires from the gray market through a catalog to be ordered in large quantities. *See* **Exhibit C**.

29.     On November 13, 2017, ATMS sent a cease-and-desist letter to Big Stock in connection with Big Stock's trademark infringement and unfair competition practices, and explicitly demanding that Big Stock promptly cease its unauthorized importation, distribution, use, and sale of the unauthorized products bearing the Mark. However, Big Stock did not cease its wrongful conduct.

30.     The Gray Market Products distributed by Big Stock in the United States, as explained further below, are materially different from the corresponding ATMS Products marketed under the same brand. For instance, they use Spanish-only labels with nutritional information and metric units that are inconsistent with FDA regulations; and they are subject to different quality control standards and transportation logistics.

[continues on the following page, the remainder was left intentionally blank]

**Material Differences Between the Authorized Zambos' Products and the Gray Market Products**

31.   For each of the Gray Market Products sold by Big Stock, there is a similar but materially different ATMS product that is actually intended for sale in the United States. The Gray Market Products sold by Big Stock use many of the same Zambos Marks that appear on ATMS' Products. For example:



| Zambos Originals | Zambos Originales |
|---|---|
|  |  |
| Zambos Salsa Verde | Zambos Salsa Verde |
|  |  |

| Zambos Chile Limón | Zambos Picositas |
| --- | --- |
|  |  |

32.     Despite their use of the same Zambos Mark and similarities in appearance, there are material differences between the ATMS Products and the Gray Market Products concerning, among other things, the information contained on the labels, graphics, certification, language, and product amount/formulation.

Labels:

33.     The Gray Market Products sold by Big Stock are labeled in Spanish while the ATMS products are labeled in English.

[continues on the following page, the remainder left intentionally blank]

13

34.     The Spanish-language labeling of the Gray Market Products is a violation of FDA regulations that require products sold in the United States to be labeled in English and allow labeling in a foreign language such as Spanish only when all required label elements are provided in both English and Spanish. *See,* 21 CFR 101.15(c)(2). For example:



| ATMS Product | Gray Market Product |
|:---:|:---:|
| Zambos Ceviche | Zambos Ceviche |

| Zambos Originals | Zambos Originales |
|---|---|
|  |  |
| Zambos Ceviche | Zambos Ceviche |
|  |  |

| Zambos Chile Limón | Zambos Picositas |
|---|---|
|  |  |
|  |  |

35.     The label on ATMS Zambos Products refers to a website affiliated with the Authorized Distributor, whereas the corresponding labels for the Gray Market Products do not refer to Dinant. The difference will not allow the United States' consumers to contact the firm responsible for the Products in the event of a safety or quality concern.

36.     The Nutrition Facts Panel on the label for the ATMS products complies with FDA regulations –font sizes, bolding, spacing, and lines between text, as well as naming and order of nutrients listed– whereas Gray Market Products, do not. *See,* 21 CFR 101.9(b), (c) and (d). The ATMS Products' labels identify the added sugar content of the products and list calories in a designated larger font, as required by the FDA. Moreover, none of the Gray Market Products identify their added sugar content or list calories in a designated larger font. Similarly, many of the Gray Market Products provide different nutritional information than the ATMS products because they may have different formulations and/or recommended serving sizes. For example:



| ATMS Product | Gray Market Product |
|---|---|
| Zambos Originals | Zambos Originales |



[continues on the following page, the remainder left intentionally blank]

37.     The labels for the ATMS products identify the quantity of the ATMS products in both United States Customary and metric units as required by FDA regulations (ounces and grams). On the contrary, Gray Market Products use only metric units (grams). For example:



| ATMS Product | Gray Market Product |
| --- | --- |
| Zambos Ceviche | Zambos Ceviche |

[continues on the following page, the remainder left intentionally blank]

38.     The labels for the ATMS package identify the distribution channels and quality control procedures with the mark 'QUALITY EXPORT', which provides a guarantee to retailers and customers that the Zambos chips are sold by ATMS and that it complies with high standards of quality. On the contrary, the Gray Market Products, do not contain the 'QUALITY EXPORT' mark. For example:

| ATMS Product | Gray Market Product |
|---|---|
| ATMS Package | Big Stock Package |



39.     Furthermore, upon information and belief, Big Stock has engaged in the commercialization and sale, within the United States, of food products that have not been authorized by the FDA for sale in the United States, such as Zambos Chicharrón.

Product Composition and Formulation:

40.     The compositions and formulations of ATMS' products and Gray Market Products may also differ. ATMS and Big Stock versions of *Zambos Ceviche* have a different composition (*i.e.*, 155g versus 140g). Moreover, ATMS and Big Stock versions of *Zambos Ceviche* have different fat and sugar content. This means that ATMS' products—intended for importation, distribution, and sale for the United States—are different in composition and use of ingredients than the Zambos' goods intended for sale in Latin America. For example:

| | Content Per Serving | |
| --- | --- | --- |
| | ATMS Zambos Salsa Verde | Big Stock Zambos Salsa Verde |
| Fat Content | 7.0g | 6.0g |
| Sugar Content | 1.0g | 0g |

<u>Other Material Differences</u>:

41.     Because ATMS Products are distributed and sold in the United States, they are subject to food safety and quality assurance processes to ensure they meet the requirements of the United States. laws and regulations. The Gray Market Products are subject to different safety and quality standards. Thus, it may be difficult to trace the products and their ingredients to determine their source.

42.     Under 21 C.F.R. 101.15(c), any product that makes representations in Spanish must include all required labeling elements—including nutritional facts and ingredients information—both in English and in Spanish. The Gray Market Products fail to comply with this requirement.

43.     ATMS Products bare a 'QUALITY EXPORT' mark on the top right corner of the bag. This certification illustrates that those bags comply with the FDA and are authorized to be distributed in the United States with high standards.

**Effects of Big Stock's Wrongful Conduct on ATMS and Its Customers**

44.     Retailers and consumers have purchased the Products sold and distributed by Big Stock under the mistaken belief that those products are ATMS Products, and/or that the distribution and sale of those products are associated with ATMS and the Mark. As a result, those retailers and consumers have purchased materially different products from the ones they believed they were purchasing.

45.     ATMS has rigorous standards of quality and freshness for its products. To this end, it has developed a structure that guarantees freshness from the moment of producing the Products to the moment of delivery to retailers. Gray market products are often expired. Notwithstanding, gray marketers sell expired products to consumers. By failing to provide the products that ATMS and its legitimate Authorized Distributor provide to retailers and consumers, Big Stock has been able to offer low prices for the Zambos products it sells. Because of this, retailers have purchased the Products from gray marketers, like Big Stock, instead of directly from ATMS or its Authorized Distributor. This has harmed ATMS' business in numerous ways, including, among others, harm to its goodwill, loss of revenue, consumer dissatisfaction, and declining relations with legitimate retailers.

46.     ATMS' goodwill and business have been harmed by Big Stock's action. This damage to ATMS and the goodwill associated with the Mark is likely to continue if Big Stock's infringing activities do not cease.

47.     Big Stock has willfully engaged in this unlawful conduct despite knowing that they are infringing ATMS' rights to the Mark in the United States.

## FIRST CAUSE OF ACTION
### Trademark Infringement Under The Lanham Act (15 U.S.C. § 1114(1))

48.     ATMS incorporates and re-alleges each and every allegation set forth in paragraphs 1 to 47 above as if fully set forth herein.

49.     Without ATMS' consent, Big Stock have infringed ATMS' rights to the Mark in interstate commerce by various acts, including advertising, distributing, and offering for sale goods bearing the Mark, including the Gray Market Products, which were manufactured solely for the Latin American market, and were not manufactured by ATMS for sale in the United States under the Mark.

50.     Big Stock's acts of infringement are likely to cause, and have caused, confusion, mistake, and deception, in that purchasers and others in the United States are likely to believe ATMS authorizes and controls the sale of the Gray Market Products, or that they are in any matter associated with or related to ATMS or are authorized by ATMS to distribute or sell the Products in the United States, in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C.A. § 1114(1)(a).

51.     Big Stock has had actual and constructive knowledge of ATMS' superior rights in and to the Mark, and Big Stock continues to use the Mark with actual knowledge of infringing conduct. Big Stock's conduct was undertaken willfully and/or with reckless disregard of ATMS' rights and continued even after ATMS sent a cease-and-desist letter, and with the intention to cause confusion, mistake, or deception, making this an exceptional case entitling ATMS to recover additional damages and reasonably attorneys' fees.

52.     If not restrained, Big Stock will have unfairly derived and will continue to derive income, profits, gain, and business opportunities as a result of their acts of infringement. As a direct and proximate result of the actions of Big Stock alleged above, ATMS has been damaged and will continue to be damaged.

53.     By reason of the foregoing, ATMS is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, an order directing that infringing Gray Market Products be destroyed pursuant to 15 U.S.C. § 1118, as well as actual damages, treble damages, disgorgement of Big Stock' profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## SECOND CAUSE OF ACTION
## False Designation of Origin and Unfair Competition Under The Lanham Act (15 U.S.C. § 1125(a))

54.     ATMS incorporates and re-alleges each and every allegation set forth in paragraphs 1 to 53 above as if fully set forth herein.

55.     Big Stock's unauthorized importation, distribution, marketing and sale of products bearing the Mark—which are materially different from the Products sold by ATMS in the United States—places the nature and quality of products bearing the Mark beyond the control of ATMS and deprives ATMS to control their quality.

56.     Big Stock's acts of false designation of origin and unfair competition are likely to cause and have caused, confusion, mistake, and deception as to the affiliation connection, or association of Big Stock with ATMS, and as to the origin, sponsorship, and/or approval of the Gray Market Products, in that purchasers and others in the United States are likely to believe ATMS authorizes and controls the sale of the Gray Market Products, or ATMS is in any matter related or affiliated with Big Stock.

57.     Big Stock's acts of false designation of origin and unfair competition are likely to cause, and have caused, confusion, mistake, and deception, in purchasers in the United States. Big Stock has unfairly derived and will continue to derive income, profits, gain and business opportunities as a result of their acts of infringement. As a direct and proximate result of the actions of Big Stock alleged above, ATMS has been damaged and will continue to be damaged. Unless restrained by this Court, Big Stock will continue to inflict great and irreparable harm on ATMS.

58.     Big Stock's conduct was undertaken willfully and/or with reckless disregard of ATMS' rights, and continued even after ATMS sent a cease-and-desist letter, and with the intention to cause confusion, mistake, or deception, making this an exceptional case entitling ATMS to recover additional damages and reasonably attorneys' fees.

59.     ATMS is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, an order directing that infringing products be destroyed pursuant to 15 U.S.C. § 1118, and to actual

damages, treble damages, disgorgement of Big Stock's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## THIRD CAUSE OF ACTION
### Unlawful Importation of Goods Infringing U.S. Trademarks or Names (15 U.S.C. § 1124 and 19 U.S.C. § 1526)

60.     ATMS incorporates and re-alleges each and every allegation set forth in paragraphs 1 to 59 above as if fully set forth herein.

61.     By reason of Big Stock's wrongful importing of the products bearing the Mark, including the Gray Market Products—that are materially different from products authorized for sale in the United States under the Mark— ATMS has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the Mark, and damage to the goodwill associated therewith, for which they have no adequate remedy at law.

62.     ATMS is entitled to an order enjoining and restraining Big Stock from diverting, distributing, and selling the Zambos Products intended for Latin America in the United States. ATMS is also entitled to seizure and/or require Big Stock to destroy the Zambos products intended for Latin America in their possession, as well as actual damages, treble damages, disgorgement of Big Stock's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, among other relief.

## FOURTH CAUSE OF ACTION
### Unfair Competition Under New Jersey Statutory Law (N.J.S.A. § 56:4-1)

63.     ATMS incorporate and re-alleges each and every allegation set forth in paragraphs 1 to 62 above as if fully set forth herein.

64.     Big Stock's appropriation and actual use in connection with the Gray Market Products and the goodwill and reputation associated therewith and attached thereto constitute unfair competition in violation of N.J.S.A. 56:4-1, et seq.

65.     Big Stock's actions as alleged herein have caused and will continue to cause irreparable damage and injury to ATMS if not enjoined by this Court, for which Plaintiff has no adequate remedy at law.

66.     Big Stock's conduct was undertaken willfully and/or with reckless disregard of ATMS' rights and continued even after ATMS sent a cease-and-desist letter, and with the intention to cause confusion, mistake, or deception, making this an exceptional case entitling ATMS to recover additional damages and reasonably attorneys' fees.

67.     ATMS is entitled to an order enjoining and restraining Big Stock from diverting, distributing, and selling the Zambos Products intended for Latin America in the United States. ATMS is also entitled to seizure and/or require Big Stock to destroy the Zambos products intended for Latin America in their possession, as well as actual damages, treble damages, disgorgement of Big Stock's profits, the costs of this action, and attorneys' fees pursuant to N.J.S.A. § 56:4-2, among other relief.

## FIFTH CAUSE OF ACTION
### Trademark Infringement, Unfair Competition, False Designation of Origin, and Misappropriation Under New Jersey Common Law

68.     ATMS incorporate and re-alleges each and every allegation set forth in paragraphs 1 to 67 above as if fully set forth herein.

69.     ATMS owns all rights, titles and interests in and to the Mark. Big Stock has infringed and continues to infringe ATMS' trademark in New Jersey and elsewhere in the United States by, without consent, importing, advertising, distributing, selling, and offering to sell Zambos' Products intended for Latin America, including the Gray Market Products, in the United States that are likely to be confused with the Mark, including because they are likely to cause and have caused, confusion, mistake, and deception as to the affiliation connection, or association of

Big Stock with ATMS, and as to the origin, sponsorship, and/or approval of the Gray Market Products, in that purchasers and others in the United States are likely to believe ATMS authorizes and controls the sale of the Gray Market Products, or ATMS is in any matter related or affiliated with Big Stock.

70.     Big Stock's infringing activities have caused, are likely to cause, and are causing confusion, mistake, and/or deception on the part of consumers regarding the association of Big Stock to ATMS, or as to the origin, sponsorship, or approval of Big Stock's goods by ATMS.

71.     Big Stock's infringing activities misrepresent the nature, characteristics, qualities, and origin of Big Stock's goods. For this reason, Big Stock's infringing activities constitute common law infringement of ATMS' Zambos trademark.

72.     Big Stock has been and continues to infringe ATMS' trademark rights with full knowledge of or at least willful and reckless disregard for ATMS' common law rights.

## PRAYER FOR RELIEF

WHEREFORE, ATMS prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including, but not limited to, the following:

1.     Temporary, preliminary, and permanent injunctions enjoining Big Stock and its employees, officers, directors, principals, subsidiaries, parents, affiliates, related companies, agents, and all persons in active concert or participation with any of them:

   a.   From acquiring, transporting, distributing, developing, offering to sell, or selling any products bearing the Mark;

   b.   From using the Mark or any other trademark owned by ATMS and/or licensed to its Authorized Distributor in connection with its business;

c.  From infringing the Mark or any other trademark owned by ATMS and/or licensed to its Authorized Distributor.

d.  From causing a likelihood of confusion, deception, or mistake as to the source, nature, or quality of the Products or any other products manufactured, distributed, or sold by ATMS and/or that bears the Mark;

e.  From using any false designation of origin or false representation concerning the Products or any other products manufactured, distributed, or sold by ATMS and/or that bear the Mark; and

f.  From any act of unfair competition or unfair practice affecting ATMS, the Products, or any other products manufactured, distributed, or sold by ATMS and/or that bear the Mark.

2.  An Order directing Big Stock to file with this Court and serve on ATMS' attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the Court's injunction;

3.  An Order directing Big Stock to destroy the Gray Market Products  or any other products bearing the Mark in the possession of the Big Stock and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

4.  An Order seizing Gray Market Products  or any other products bearing the Mark in the possession of the Big Stock and their officers, agents, servants, employees, affiliates, successors, assigns, and all persons acting in concert or participation with them;

5.  An accounting and disgorgement of all of Big Stock's profits resulting from the sale of the Zambos Products and any other products bearing the Mark in the United States;

6.     An Order requiring Big Stock to pay ATMS' damages in an amount as yet undetermined caused by the foregoing acts of infringement, and trebling such damages for payment to ATMS in accordance with 15 U.S.C. § 1117, N.J.S.A. §§ 56:4-2, 56:3-13.16 and other applicable laws;

7.     An Order awarding ATMS actual damages and damages in connection with correcting any erroneous impression persona may have derived concerning the nature, characteristics, or qualities ATMS' Products, including without limitation in connection with the placement of corrective advertising and providing written notice to the public;

8.     An Order requiring Big Stock to pay ATMS all of its litigation expenses, including reasonable attorneys' fees and costs under 15 U.S.C. § 1117, N.J.S.A. §§ 56:4-2, 56:3-13.16, New Jersey common law, and other applicable laws;

9.     An Order requiring Big Stock to pay ATMS punitive damages in an amount to be determined due to the foregoing willful acts under 15 U.S.C. §1117; and

10.    Any other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, ATMS respectfully demands a trial by jury on all issues properly triable by a jury in this action.

Dated: November 8, 2021

**RIVKIN RADLER LLP**

By:     *s/Gene Y. Kang*
       Gene Y. Kang
       25 Main Street, Suite 501
       Court Plaza North
       Hackensack, New Jersey 07601
       Telephone:  201-287-2460
       Fax: 201-489-0495

       Maristella Collazo-Soto (to be admitted *pro hac vice*)
       **FERRAIUOLI LLC**
       221 Ponce de León Avenue, Suite 500
       San Juan, Puerto Rico 00917
       Telephone: 787-766-7000
       Fax: 787-766-7001

       *Counsel for Plaintiff, Advanced Total Marketing Systems, Inc.*

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding,

Dated: November 8, 2021.

**RIVKIN RADLER LLP**

By:     _s/Gene Y. Kang_

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1</u>

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that ATMS, seeks in excess of $150,000.00, exclusive of interest and costs, and seeks injunctive relief.

Dated: November 8, 2021.

**RIVKIN RADLER LLP**

By:     *s/Gene Y. Kang*

5575872.v1